UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANTHONY FLOYD,<br><br>    Plaintiff,<br><br>    v.<br><br>PNC MORTGAGE, a division of PNC Bank, N.A., *et al.*,<br><br>    Defendants. | Civil Action No. 14-2190 (JEB) |

**MEMORANDUM OPINION**

"Worm or beetle – drought or tempest – on a farmer's land may fall, / But for first-class ruination, trust a mortgage 'gainst them all."  Will Carleton may have written these words over a century ago to capture the plight of rural American farmers, but Plaintiff Anthony Floyd alleges that he can bear witness to their continued relevance for the urban real-estate investor of today. According to him, after the District of Columbia erroneously listed one of his residential properties as blighted, Defendants PNC Mortgage and The Bank of New York Trust Company improperly required inflated mortgage payments to cover the subsequent increase in property taxes.  He then sued them, citing two federal statutes and a variety of state causes of action. Defendants now move for summary judgment on the ground, *inter alia*, that the federal laws Floyd invokes do not apply to his loan.  As the Court agrees, it will grant Defendants' Motion as to his federal counts and refuse to exercise supplemental jurisdiction as to what is left.

**I.   Background**

The Court need not enter the corn maze of this case as a few facts laid out in the light most favorable to Plaintiff will suffice.  On April 14, 1988, Floyd purchased a single-family

house located at 17 Rhode Island Avenue N.E., Washington, D.C.  See ECF No. 10 (Amended Complaint), ¶ 6; ECF No. 37-4 (Deposition of Anthony Floyd) at 12.  The Property was originally purchased as an owner-occupied residence.  See Floyd Depo. at 12-14.  In or around 1996, however, Floyd moved out and rented the Property to others thenceforth.  Id. (confirming he might have lived at Property for some period, but not in the past 20 years).

In 2004, Plaintiff refinanced the Property by securing a residential loan from National City Mortgage Company.  See ECF No. 41-1, Exhs. 1 (Note), 2 (Deed of Trust).  To effectuate that loan, he executed a Note and Deed of Trust on single-family residential forms.  Id.  All went well with the mortgage until the District of Columbia erroneously listed the Property as blighted in 2011 and, accordingly, began charging additional property taxes on it.  See ECF No. 41-1, Exhs. 4-5.  Defendants had, by this time, taken over the loan servicing and thus paid these additional taxes to the District.  See ECF No. 41-2, Exh. 6.  They then sought to recover these amounts from Plaintiff by increasing the escrow property-tax portion of his monthly mortgage payments to match the new tax rate.  Id.  Floyd, however, protested that he was not obligated to pay this new sum.  See ECF No. 39 (Opposition) at 3-4.  Defendants, nevertheless, continued to seek higher payments and eventually declared the mortgage in default.  Id.; Floyd Depo. at 44.

On October 15, 2014, Floyd filed this action in the Superior Court of the District of Columbia.  See ECF No. 1 (Notice of Removal).  After Defendants successfully removed the case to this Court, Floyd filed an Amended Complaint asserting six claims against them.  See ECF No. 10.  Counts I and II allege that they violated two federal laws — the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*, and the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq.*  See Am. Compl., ¶¶ 24-61.  The remaining four counts allege various claims related to unfair or deceptive business practices in violation of District of

Columbia laws. Id., ¶¶ 62-86. Discovery is now complete, and Defendants jointly move for summary judgment on all counts.

## II.     Standard of Review

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would

permit a reasonable jury to find in its favor. See Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

**III.   Analysis**

The Court first takes up Floyd's two federal claims, granting summary judgment to Defendants on both. It next describes its reasons for not exercising supplemental jurisdiction over what remains.

    A.   Federal Claims (RESPA and TILA)

Both of Plaintiff's federal claims rely on statutes — RESPA and TILA — that Congress passed to protect consumers from abuse by creditors. Mourning v. Family Publications Serv., Inc., 411 U.S. 356, 361-68 (1973) (explaining history of TILA's passage to remedy problems with consumer credit); Johnson v. Wells Fargo Home Mortg., Inc., 635 F.3d 401, 417 (9th Cir. 2011) (explaining Congress passed RESPA "in 1974 to protect consumers from abusive practices in mortgage closings"). Neither of these statutes, accordingly, applies to loans taken out for commercial or business purposes. See 12 U.S.C. § 2606(a)(1) (RESPA) (exempting "credit transactions involving extensions of credit . . . primarily for business, commercial, or agricultural purposes"); 15 U.S.C. § 1603(1) (TILA) (same). In general, a loan is deemed to be for a business purpose when it is "extended to acquire, improve, or maintain rental property . . . that is not owner-occupied" — *e.g.*, "a single-family house that will be rented to another person to live in." 12 C.F.R. pt. 226, supp. I, cmt. 3(a)(4); accord Johnson, 635 F. 3d at 417.

The fundamental problem with Floyd's federal claims is thus readily apparent. On his 2004 mortgage forms, he explicitly indicated that he intended to use the Property for "investment" purposes. See ECF No. 37-8 (Application) at 1 (indicating "Property will be Investment," rather than "Primary Residence" or "Secondary Residence"). He then confirmed in

his deposition in this case that he in fact has used the Property as a rental since refinancing it in 2004 and, indeed, for nearly a decade before doing so.  See Floyd Depo. at 12-14.  These two facts alone are fatal to his federal claims.

Plaintiff acknowledges that these statutes do not apply to business loans.  See Opp. at 7-8.  He nevertheless seeks to avoid summary judgment by advancing two arguments, both of which are factually misleading.  He first contends that there is a genuine issue of material fact as to whether he lived at the property within a year of acquiring the 2004 loan, see id., thus rendering it a consumer transaction under RESPA and TILA.  To support this assertion, he points only to three pages of his deposition.  Reproducing those pages in full tells quite a different tale:

> A. [Responding to question of how long he has owned the Property . . .]  Twenty?  Let me think back. This is 2000 –
> Q. This is 2016.  So, say, from 1996, have you owned [the Property] since at least 1996?
> A. Yes.
> Q. What kind of property is it?
> A. It's a row house.
> Q. All right.  And is it a multifamily row house?
> A. No.
> Q. Single-family?
> A. Yes
> Q. Do you rent that property?
> A. Yes.
> Q. Have you rented it continuously since you've owned it?
> A. No.
> Q. Have you used it for any purpose other than rental?
> A. Yes.
> Q. For what other purpose have you used it?
> A. As a – I believe I lived there at some point.
> Q. Can you say when you lived there?
> A. I can't remember.
> Q. Can you put it within a five-year frame?
> A. Maybe '91 maybe, '92.  I'm guessing.  I can't remember when I used to live there.  Not off the top of my head, I can't remember.
> Q. When you bought the property, did you intend to live there?
> A. I did.
> Q. Did you in fact move in after you bought it?
> A. At some point I lived there.

5

> Q. After you acquired the property, was your first use of the property as a residence or as a rental to a tenant who paid monthly rent?
> A. Oh, I can't remember. I lived there. I want to say I lived there. That's what my tenant use was for, to have it as an owner-occupied residence. So – I can't remember back that far.
> Q. So is it fair to say that you're not sure whether your initial use was as a personal residence or as a rental to someone else?
> A. I lived in the house as an owner unoccupied at some point after purchasing it.
> Q. But you don't remember whether you were the first person who occupied it after you bought it or somebody else was?
> A. I want to say I was the first person that occupied it.
> Q. But you're not sure.
> A. I'm not sure.
> Q. Approximately, how long did you live there?
> A. I don't remember.
> Q. Fair to say that it's been <u>at least 20 years</u> since you lived at Rhode Island Avenue, 17 Rhode Island Avenue, Northeast?
> A. Twenty years?
> Q. I just say 20 because you said '91-'92 was your best estimate.
> A. Repeat that question.
> <u>Q. Sure. Is it fair to say that it's been at least 20 years since you've resided at 17 Rhode Island Avenue, Northeast?</u>
> <u>A. Yes.</u>

Floyd Depo. at 12-15 (emphases added). This testimony plainly confirms that Floyd did not live at the Property from <u>at least</u> 1996 onward. Tartuffe, then, might find familiar the irony inherent in Floyd's seeking to advance claims against Defendants for alleged misrepresentations by concocting a blatant one of his own making. The Court, however, finds none of Molière's humor in Plaintiff's gross mischaracterization of the record.

Floyd's second argument fares no better. He claims that RESPA and TILA should apply to his mortgage because the residential Note and Deed of Trust forms contained language from these statutes. <u>See</u> Opp. at 7-8. In support, he cites only to an <u>unlabeled</u> and <u>unsigned</u> single page RESPA disclosure, which he claims to have gotten as part of his loan package in 2004. <u>Id.</u>; <u>see</u> ECF No. 41-4, Exh. 20. The reliance on such incompetent evidence, torn from any context, might ordinarily be baffling. But, here, its purpose seems geared toward avoiding the language

of the actual signed Deed of Trust.  See ECF No. 41-1, Exh. 2.  That document discusses and refers to RESPA at points, but includes in its definitional section the disclaimer that RESPA does not necessarily apply to Floyd's particular loan.  Id. at 3.  Even assuming, then, that Plaintiff's unsigned sheet is the sort of competent evidence necessary to survive summary judgment (doubtful) or that such language would have legal relevance regardless (questionable), his argument nonetheless fails inasmuch as it is belied by the plain terms of his loan Application, deposition testimony, and the Deed itself.  Accord Henok v. Chase Home Finance, LLC, 950 F. Supp. 2d 96, 98-100 (D.D.C. 2013) (coming to same conclusion on identical language).

As it is plain that neither RESPA nor TILA applies to the loan at issue in this case, the Court will grant summary judgment to Defendants on both federal claims.

### B.  Supplemental Jurisdiction

If Plaintiff cannot establish that either RESPA or TILA applies here, then this Court lacks subject-matter jurisdiction over his remaining nonfederal claims, and it will decline to exercise supplemental jurisdiction.  Federal district courts are given supplemental (or "pendent") jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction.  28 U.S.C. § 1367(a).  By the same token, they "may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"  Id. § 1367(c)(3).  The decision of whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion as "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); see also Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005).  When deciding whether to exercise supplemental jurisdiction over state claims, federal courts should consider "judicial economy,

convenience, fairness, and comity." Shekoyan, 409 F.3d at 424 (quoting Carnegie-Mellon Univ. v. Cohill, 483 U.S. 343, 350 n.7 (1988).  When all federal claims are eliminated before trial, however, those factors "will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon, 484 U.S. at 350 n.7; see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1267 (D.C. Cir. 1995) (finding the discretion set out in Carnegie-Mellon Univ. "unaffected by the subsequent enactment of 28 U.S.C. § 1367(d), in the Judicial Improvements Act of 1990").

These factors weigh against retention here.  The Court is dismissing both federal claims against Defendants.  This case has not progressed in federal court past this Motion for Summary Judgment, and the Court has developed no familiarity with the additional issues presented.  Cf. Schuler v. PricewaterhouseCoopers, LLP, 595 F.3d 370, 378 (D.C. Cir. 2010) (holding that district court appropriately retained pendent jurisdiction over state claims where it had "invested time and resources" in the case).  Although dismissal of the remainder of the case without prejudice – so that Plaintiff could file in the "appropriate state court" – is the typical result in these circumstances, this case is somewhat different.  Given that it was Defendants who removed the matter here, the fairer course is to remand the case to Superior Court, where Plaintiff may prosecute his local causes of action.

**IV.     Conclusion**

For the reasons articulated herein, the Court will issue a contemporaneous Order granting Defendants' Motion for Summary Judgment in part and remanding the local claims to Superior Court.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  October 24, 2016